UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS MAYER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE,<br><br>Defendant. | Case No.  5:20-cv-06710-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 69, 71 |

Plaintiff, Thomas Mayer ("Mayer"), filed suit against Defendant, City of San Jose ("City"), alleging that the public facilities at the San Jose City Hall ("City Hall") violate the Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights Act ("Unruh Act"), and other California state laws.  *See* Second Am. Compl. ("SAC"), ECF No. 61.

Before the Court is Mayer's motion for summary judgment ("MSJ") and the City's cross-motion for summary judgment ("Cross-MSJ").  Pl.'s Mot. for Summ. J. ("MSJ"), ECF No. 69; Defs.' Cross Mot. for Summ. J. ("Cross-MSJ"), ECF No. 71.  The parties have fully briefed both motions.  Pl.'s Reply in Support of MSJ and in Opp'n of Cross-MSJ ("Pl.'s Reply"), ECF No. 77; Def.'s Reply in Support of Cross-MSJ and in Opp'n to MSJ ("Def.'s Reply"), ECF No. 78.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Mayer's motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** the City's cross-motion for summary judgment.

# I.    BACKGROUND

## A.    Mayer Encounters Barriers at City Hall

Mayer is disabled and uses a wheelchair for mobility.  Responsive Separate Statement ("Statement of Facts"),[1] Fact 1, 2, ECF No. 76.  Mayer is an amateur photographer who enjoys capturing pictures of public protests and cultural events, which he refers to as "First Amendment Events."  *Id.* at Fact 8, 9.  Mayer has attended about a dozen First Amendment Events at City Hall in the West Plaza on the evenings and weekends when City Hall is closed.  *Id.* at Fact 8, 9, 10, 16, Additional Fact E.  The West Plaza is an outdoor space located adjacent to City Hall with various elevated areas surrounding it.  *See id.* at Additional Fact B.  Portions of the West Plaza may be reserved for events, but no permit or payment is required to conduct a simple assembly of persons on an unreserved area of the West Plaza, including the First Amendment Events.  *Id.* at Fact 7.

Mayer illustrates the West Plaza as follows:



Declaration of Thomas Mayer ("Mayer Decl.") ¶ 7, ECF No. 69-3.

---

[1] The Court cites to the parties' Statement of Facts to identify undisputed facts unless otherwise noted.

United States District Court
Northern District of California

1    Mayer describes "Location 1" as the steps next to the battered wall or exterior walkway,

2    "Location 2" as the flat viewing area, "Location 3" as the tiered seating, "Location 4" as the

3    rotunda's exterior terrace, and "Location 5" as the mezzanine level/balcony (collectively,

4    "elevated areas").  *See id.*  The City disputes Mayer's characterization of Location 2 as a flat

5    viewing area and Location 5 as a mezzanine or balcony, instead arguing that they are merely

6    walkways not intended to be used for viewing events.  *See* Cross-MSJ 1; Statement of Facts, Fact

7    16.  For ease of analysis, the Court will use Mayer's labels to illustrate its discussion of the

8    elevated areas, but the Court does not reach conclusions regarding the elevated area's function, as

9    discussed in greater detail below.

10    During the various First Amendment Events, Mayer has observed and photographed other

11    attendees standing in the elevated areas of the facility, which he believes offers a better view of the

12    speakers and crowd.  Mayer Decl. ¶¶ 7, 10, 13–21; Mayer Decl., Ex. 1, 3, 4, 5, 6, 7, ECF No. 69-4,

13    69-6, 69-7, 69-8, 69-9, 69-10 (photographs).  These photographs include the following:






**Top Left:** Depicting Locations 4 and 1. Mayer Decl., Ex. 1.

**Top Right:** Depicting Locations 1, 2, and 3.  *Id.*, Ex. 7.

**Bottom Left:** Depicting Locations 1, 2, and 5.  *Id.*

Case No.: 5:20-cv-06710-EJD
ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN. IN PART CROSS-MSJ

1  Mayer cannot access any of the elevated areas when City Hall is closed because there is no

2  wheelchair access to these locations from the exterior of City Hall.  Statement of Facts, Fact 16.

3  There is, however, access to the rotunda and mezzanine through the interior of City Hall when

4  City Hall is open, but the First Amendment Events have taken place on the weekend or after hours

5  when City Hall is closed.  *Id.*

6  Without access to the elevated areas, Mayer alleges, and the City disputes, that he is unable

7  to enjoy the event and take photographs in the same way able-bodied attendees can because his

8  view is obstructed.  *Id.* ¶ 7.  Specifically, Mayer alleges that he was denied equal access to these

9  elevated areas when he attended First Amendment Events in the West Plaza on November 24,

10  2019; January 18, 2020; July 4, 2020; May 1, 2022; and May 14, 2022.  Mayer Decl. ¶¶ 14, 15,

11  18, 19.

12  For illustrative purposes, Mayer attached the following photograph to depict how his view

13  was obstructed during these instances:




**Left:** Mayer in the crowd of a First Amendment Event.  Mayer Decl., Ex. 3.

**Right:** Zoomed in depiction of image on the left highlighting Mayer in the crowd.  *Id.*; Mayer Decl. ¶ 13.

23  Knowing there is access to some of the elevated areas through City Hall's interior, Mayer

24  went to City Hall during normal business hours on November 27, 2019, to see if he could use the

25  accessible route inside City Hall.  *Id.* at Additional Fact I.  However, Mayer alleges the doors from

26  the interior of City Hall to the mezzanine were too heavy for him to open, and he needed help

27

28  ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN. IN PART CROSS-MSJ

1   from a City employee.  Mayer Decl. ¶ 15.  For illustrative purposes, Mayer attached the following

2   photograph of the doors that lead to the mezzanine and rotunda:



10   *Id.* ¶ 7.

11          **B.      Mayer Alerts the City of Barriers, and the City Declines Accommodations**

12          Mayer first called the City's ADA Coordinator regarding barriers to the elevated areas on

13   November 28, 2016, after attending a First Amendment Event the day prior.  Statement of Facts,

14   Fact 17.  The parties dispute whether Mayer specifically sought access to the elevated areas in that

15   communication.  *See id.*  The ADA Coordinator followed up in an email indicating her opinion

16   that the First Amendment Event was "*not* a City organized event . . . [and a]s a result, there was no

17   violation of the American with Disabilities Act."  Mayer Decl., Ex. 2, ECF No. 69-5 (emphasis in

18   original).  Mayer emailed back that he believed the West Plaza is a public space subject to the

19   ADA, but the City did not respond to his email, and there were no additional communications

20   regarding Mayer's complaint.  *Id.*; Mayer Decl. ¶ 12.

21          In April 2020, May 2020, November 2020, and June 2022, Mayer submitted government

22   claims to the City alerting them of the barriers to accessing the elevated areas during the First

23   Amendment Events.  Statement of Facts, Fact 20.  Specifically, in his April and May 2020 claims,

24   Mayer reported to the City his challenges accessing elevated areas at West Plaza during the First

25   Amendment Events due to the absence of ramps and heavy doors, and he proposed the installation

26   of ramps to improve accessibility.  Statement of Facts, Fact 21.  The City rejected all of Mayer's

27

28   Case No.: 5:20-cv-06710-EJD
     ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN.
     IN PART CROSS-MSJ
                                                    5

United States District Court
Northern District of California

claims.  Statement of Facts, Fact 25.  The City disputes whether the claims specifically sought accommodations.  *Id.* at Fact 20.  The City also notes that City Hall was closed to the public due to COVID-19 from March 17, 2020, through July 13, 2020, and again from March 17, 2020, until August 2, 2021.  *Id.* at Additional Fact R.

Mayer argues that his need for accommodations was both reasonable and necessary, and the City's refusal to accommodate his disability constitutes discrimination in violation of the ADA and related California laws.  MSJ 5, 6, 13–17.  Mayer also argues that the City's practice of locking City Halls doors after hours has a disparate impact on people with disabilities who cannot access the elevated areas without access to the interior of City Hall in violation of the ADA.  *Id.* at 17.

### C.     The Parties Inspect City Hall

On March 17, 2021, Mayer's expert, Bassam Altwal ("Altwal"), conducted an inspection of City Hall.  Decl. of Bassam Altwal ("Altwal Decl.") ¶ 6, ECF No. 69-11.  Altwal opined that the City Hall facilities violated the ADA and California state regulations.  *See id.*  Specifically, Altwal concluded that there was no accessible exterior path of travel down from the doors on the second floor at the top of the mezzanine, no directional and informational signage along that exterior route of travel, and "decorative grates" on a walking path exceeding 1/2 inch in violation of the ADA and state regulations.  Altwal Decl. ¶¶ 11, 26.  Altwal also concluded that the doors from City Hall interior to the mezzanine on the second floor exceeded the allowable 8.5 pound operating pressure, instead measuring at 20 pounds or more at a 90-degree angle in violation of state regulations.  *Id.* ¶¶ 27, 28.

On October 25, 2023, the City's expert, Neal Casper ("Casper"), conducted an inspection of City Hall.  Decl. of Neal Casper ("Casper Decl.") ¶ 4, ECF No. 72.  Casper opinioned that there were no ADA or state regulation violations at City Hall, except for potentially the doors' operating pressure.  *See id.*  In response to Altwal's conclusions, Casper opined that the City does not need to have an accessible exit route from the mezzanine on the second floor because City Hall has a

United States District Court
Northern District of California

supervised automatic sprinkler system, signage is not required because the doors are used as an exit not an entrance, and the openings are drainage not "decorative grates" for purposes of the regulations Altwal cites. *Id.* ¶¶ 5, 38. Regarding the doors, while Casper's measurements also exceeded the minimum 8.5 allowance, as he measured between 9 to 10 pounds of pressure at a 70-degree angle, Casper indicated that his measurements may have been impacted by the wind. *Id.* ¶ 44.

### D. Proposed Accommodations

Mayer proposes the following accommodations to provide access to the elevated areas: (1) unlocking City Hall doors for interior access, along with fixing the door operating pressure; (2) building a ramp along the exterior walkway; or (3) installing chair lifts. MSJ 16. The City disputes the reasonableness and feasibility of all proposals. *See generally* Cross-MSJ.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only when the moving party shows that there is no genuine dispute of material fact. A genuine dispute exists if there is sufficient evidence that a reasonable fact finder could decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And that dispute is material if it might affect the outcome of the suit. *Id.* In determining if a genuine dispute of material fact exists, a court must "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party bears the burden of persuading the Court that there is no genuine dispute of material fact, and it also bears the initial burden of producing evidence that demonstrates there is no dispute. *Cunningham v. Medtronic, Inc.*, 2018 WL 4053446, at *2 (N.D. Cal. Aug. 24, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the moving party bears the ultimate burden of persuasion, its initial burden of production is to "establish 'beyond controversy every essential element of'" its claim or defense. *S. Cal. Gas Co. v. City of Santa*

United States District Court
Northern District of California

1    *Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  If the moving party satisfies this initial

2    burden, the nonmoving party can nonetheless defeat summary judgment by showing "the

3    evidence, taken as a whole, could lead a rational trier of fact to find in its favor."  *Id.*

## III.    DISCUSSION

5        Both parties requested summary judgment as to liability on all counts.  As an initial matter,

6    the Court will address the parties' various requests for judicial notice and objections before

7    moving to the parties' arguments regarding the statute of limitations, ADA liability, and liability

8    under various California state laws.

### A.        Request for Judicial Notice

10        A court may take judicial notice of a fact "not subject to reasonable dispute" if it is

11   "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily

12   determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

13        Mayer requests the Court take judicial notice of the following documents: (1) the City's

14   webpage describing their process for reserving plazas for events, ECF No. 69-32; (2) the City's

15   operating budget from 2019 through 2023, available through the City's webpage, ECF No. 68-13,

16   at 93–95; and (3) Chapters 10 and 11B of the 1998 California Building Code, ECF No. 69-33.

17   Pl.'s Req. for Judicial Notice, ECF No. 70.  In his reply, Mayer separately requests the Court take

18   judicial notice of a Google Earth image of City Hall West Plaza.  ECF No. 77-6.  The City did not

19   file an opposition to Mayer's requests.

20        The Court takes judicial notice of the first three documents as publicly available

21   government publications whose accuracy cannot reasonable be questioned.  The Court also takes

22   judicial notice of the Google Earth image as a document in the public record whose authenticity

23   cannot reasonably be questioned.  *See United States v. Schultz*, 537 F. App'x 702, 704 n.1 (9th

24   Cir. 2013) ("We may take judicial notice of maps, including Google Maps, to determine distances

25   and locations.").

26        The City requests the Court take judicial notice of the following documents: (1) the City's

United States District Court
Northern District of California

United States District Court
Northern District of California

Rules and Regulations supplement to Council Policy 7-2 and provisions in Chapter 13.23 of the San Jose Municipal Code ("SJMC"), ECF No. 75, at 4–16; (2) the Status Report on Deferred Maintenance and Infrastructure Backlog Memorandum, ECF No. 75, at 18–72; and (3) Municipal Code Chapter 13.23, ECF No. 75, at 74–81.  Def.'s Req. for Judicial Notice, ECF No. 74.  Mayer did not file an opposition to the City's request.  However, in his evidentiary objections, Mayer objected to the Status Report on Deferred Maintenance and Infrastructure Backlog Memorandum being considered because it was not previously disclosed.  Pl.'s Reply 5.

The Court overrules Mayer's objection and takes judicial notice of all three documents as government publications whose accuracy cannot reasonable be questioned.

**B.    Evidentiary Objections**

Moving to the parties' objections, Mayer objects to the following documents that the City filed in support of its Cross-MSJ: (1) Kevin Lee's Declaration as an undisclosed witness; (2) portions of Alexis Cervantes Guzman's testimony regarding his door pressure measurements as improper expert opinion; and (3) portions of Neal Casper's declaration regarding the wind's impact on his door measurements for prejudicial impact and lack of reliability.  Pl.'s Reply 1–5. The City responded to Mayer's objections in its reply.  Def.'s Reply 1–6.  The Court makes the following findings:

(1) The Court finds it unnecessary to rule on Mayer's objection to Kevin Lee's declaration at this time.  Even if the Court were to consider Kevin Lee's declaration, the Court finds that it does not impact the Court's findings that genuine disputes of material fact preclude summary judgment as to the reasonableness of the proposed accommodations.

(2) The Court **SUSTAINS** Mayer's objections regarding Alexis Cervantes Guzman's door pressure measurements. Not only is Guzman not an expert witness on this topic, but the City has failed to provide the Court with any information regarding the details of his measurements, including the angle at which Guzman took his measurements, which is a central part of the Court's analysis discussed below.

(3) The Court finds it unnecessary to rule on Mayer's objection to paragraph 44 of Neal Casper's declaration regarding his observation that wind impacted his measurements of the doors when opened at a 70-degree angle.  For the reasons explained below, this opinion does not impact the Court's application of both experts' measurements at a 90-degree angle.

The City objects to the following documents that Mayer filed in support of his MSJ: (1) Atwal's statement that wheelchair users are precluded from participating in City Hall meetings, "particularly when this path is the sole public entrance available for after-hours sessions"; (2) Mayer's labels on image of City Hall Plaza from Google earth of "flat viewing area" and "Mezzanine level balcony"; and (3) any cost estimates offered by Altwal.  Cross-MSJ 1.  The Court rules as follows:

(1) The Court finds it unnecessary to rule on the City's objection to Atwal's statement regarding participating in City Hall meetings.  This is not an issue Mayer raised in his request for summary judgment and it is not material to the present litigation.

(2) The Court **OVERRULES** the City's objection to Mayer's labels on the Google Earth image.  As previously discussed, the Court interprets the labels as illustrative rather than dispositive of the function of the spaces.

(3) The Court finds it unnecessary to rule on the City's objections to Atwal's costs estimates, as the Court does not reach this issue.

**C.      Objections to the City's Reply**

Mayer also raises the following objections to the City's reply: (1) the reply exceeds permissible page limits, (2) new arguments are raised in the reply, and (3) the reply relies on a previously undisclosed witness, Walter Lin.  Objections, ECF No. 79.

The Court **SUSTAINS** Mayer's first two objections.  The Court will not consider any arguments presented by the City beyond the fifteenth page or any new argument raised for the first time in its reply brief.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).  However,

United States District Court
Northern District of California

Walter Lin's declaration appears to have been filed to merely support Kevin Lee's declaration, which the Court found above does not impact its analysis.  Therefore, for the reasons previously discussed, the Court finds it unnecessary to rule on objections to Walter Lin's declaration as well.

### D.    Statute of Limitations

Moving to the substance of the parties' motions, the City's Cross-MSJ raises a statute of limitations defense to Mayer's ADA claim.  Because this is a threshold issue, the Court will first address this argument before moving to the parties' motions regarding ADA and state law liability.

The statute of limitations for an ADA claim is three years beginning after "the last events alleged in his complaint."  *Sharkey v. O'Neal*, 778 F.3d 767, 773 (9th Cir. 2015).

The City argues that new information introduced in Mayer's MSJ reveals that Mayer first became aware of the alleged barriers at City Hall in November 2016 when he called and emailed the City's ADA Coordinator regarding his concern that the steps alongside the battered wall were not accessible to persons with disabilities.  Cross-MSJ 6; Mayer Decl. ¶ 12, Ex. 2.  Because Mayer filed the present action approximately four years after these communications, the City argues that Mayer's claims are precluded by the three year statute of limitations.  *See id.*

Mayer first argues that the City is precluded from raising the statute of limitations at this time because it failed to plead statute of limitations as an affirmative defense, and it has not established good cause to amend its answer now.  Pl.'s Reply 5–6.  Further, even if the Court permits the City to rely on the statute of limitations, Mayer argues that this defense does not shield the City from liability because the November 2016 incident is just one of many in which Mayer was discriminated against, and the most recent accommodation request was sent in 2020.  *Id.* at 7–8.

The Court finds the statute of limitations does not preclude Mayer's claim.  Even if the Court were to consider the City's statute of limitations defense at this time, the City has presented no case law indicating that the statute of limitations for ADA claims begins at the time of the *first* instance of alleged discrimination.  To the contrary, the only case the City cites is *Sharkey v. O'Neal*, which, as discussed above, applied the three-year statute of limitations beginning after

United States District Court
Northern District of California

"the last events alleged in his complaint."  778 F.3d 767, 773 (9th Cir. 2015).  Here, the 2016 incident is not before the Court, and the more recent events alleged in the complaint occurred in 2019, 2020, and 2022, well within the statute of limitations.  Therefore, the Court finds that Mayer's claims are timely under the applicable statute of limitations, and the Court will continue with its analysis.

### E.    ADA Title II Discrimination

Title II of the ADA, 42 U.S.C. §12132, provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  A plaintiff bringing an ADA claim against a public entity under Title II generally must show four elements:

> (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability.

*Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).

The Court will address arguments relating to each element below.

#### 1.    Individual with Disability

It is undisputed that Mayer is disabled for purposes of the ADA.  Undisputed Facts 2.

#### 2.    A Public Entity's Services, Programs, or Activities

The Ninth Circuit has instructed that "services, programs, or activities" is construed broadly "[as] bring[ing] within its scope 'anything a public entity does.'"  *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).  "The focus of the inquiry, therefore, is not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is a normal function of a governmental entity."  *Id.* (citation

and internal quotation marks omitted).

The Court finds no genuine dispute of material fact that the First Amendment Events constitute a "service, program, or activity" by the City.  The evidence shows that the West Plaza is explicitly intended as a public gathering space that hosts a wide array of events and assemblies. Statement of Facts, Fact 6, 7; Karb. Decl., Ex. 17 ("City Hall Facility Use Policy").  These include both pre-planned permitted events and unpermitted public gatherings, such as the First Amendment Events.  Statement of Facts, Fact 6, 7.  In broadly interpreting "services" to include "anything a public entity does," *Barden*, 292 F.3d at 1076, the Court finds that regularly permitting the public to gather in the West Plaza, even without a permit, is a normal function of the City and therefore constitutes a "service" for purposes of the ADA.

### 3.   Excluded from or Denied the Benefits of the Public Entity's Services, Programs or Activities or was Otherwise Discriminated Against

Mayer alleges that the City excluded Mayer from, or denied Mayer the benefits of, the First Amendment Events in three ways: (1) failing to make accommodations, (2) implementing a policy with a disparate impact on disabled attendees, and (3) failing to construct City Hall in compliance with federal accessibility standards.  *See Payan v. Los Angeles Cmty. Coll. Dist.,* 11 F.4th 729, 738 (9th Cir. 2021) (describing various theories of discrimination under the ADA).  The Court will analyze each theory in turn.

### a.   Failure to Make a Reasonable Accommodation

Title II defines discrimination, in part, as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

The Court will examine Mayer's reasonable accommodation theory by separately analyzing whether the undisputed facts show that (i) Mayer sought accommodations, which were (ii) necessary and (iii) reasonable.

### i.   Sought Accommodations

United States District Court
Northern District of California

To establish an ADA Title II violation based on the denial of reasonable accommodations, a plaintiff must first demonstrate that the plaintiff "alerted the public entity to his need for accommodation," unless "the need for accommodation is obvious, or required by statute or regulation." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

Here, Mayer argues that he sought accommodations when he contacted the City's ADA Coordinator and submitted government claims. MSJ 13. The City does not dispute receipt of Mayer's communication or government claims but argues only that Mayer's communication and government claims did not specifically "seek accommodations" for the purposes of establishing his ADA violations. Statement of Facts, Fact 20.

The Court finds this argument unpersuasive. Mayer's only obligation was to "alert[] the public entity to his need for accommodation." *Duvall*, 260 F.3d at 1139. It is undisputed that Mayer contacted the City's ADA Coordinator and informed her of the barriers he encountered in the West Plaza in 2016. Undisputed Fact No. 17. In this email, Mayer complained that the steps alongside the battered wall were in violation of the ADA. Answer ¶ 11. In April 2020, May 2020, November 2020, and June 2022, Mayer submitted "Claims Against the City of San Jose, CA" arising out of the November 24, 2019; November 27, 2019; December 8, 2019; and January 18, 2020, incidents. SAC ¶ 22; Answer ¶ 22; Undisputed Fact No. 20. These claims also notified the City of the barriers Mayer encountered at the First Amendment Events, and two of the claims even offered solutions as settlement for Mayer's claims, including installing a ramp. Karb. Decl., Ex. 7, 8, 10, 12. The undisputed facts show that in each communication with the City, Mayer at a minimum informed the City of the barriers he encountered at City Hall Plaza and how these barriers interfered with his ability to enjoy the events in the same way as able-bodied participants. *See* Karb. Decl., Ex. 7, 8, 10, 12. The Court finds this sufficient. *See, e.g., Goodwin v. Marin Cty. Transit Dist.*, No. 21-cv07251-JSC, 2022 U.S. Dist. LEXIS 246267, at *18–19 (N.D. Cal. Apr. 6, 2022) (finding that multiple complaints about access to a public entity through submitting government claims effectively notified

the public entity of its obligations under Title II of the ADA).

**ii.     Necessary Accommodations**

A "necessary" accommodation means "more than mere access to public facilities." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).  The ADA guarantees disabled people "full and equal enjoyment."  *Id.* (internal quotation marks omitted) (quoting 42 U.S.C. § 12182(a)).  In other words, "necessary" means more than "can't do without," and "[p]ublic accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience."  *Id.*

Here, Mayer argues the accommodations are necessary to fully enjoy the events in the same manner as able-bodied attendees.  MSJ 14.  In support, Mayer presents evidence in the form of his declaration, deposition, and photographs, as well as the deposition of the City's senior event coordinator, Jennifer Garcia.  Karb. Decl., Ex. 2, Dep. of Jennifer Garcia ("Garcia Dep."), ECF No. 69-4.  Mayer's declaration states that he was unable to view the speakers from the ground floor, and he observed abled-bodied persons enjoying better views by accessing the elevated areas in the West Plaza during each event he attended.  *See, e.g.,* Mayer Decl. ¶ 7, 10, 13, 14, 16, 18.  Mayer attached photographs he took of these events to illustrate his observations.  *See* Mayer Decl., Ex. 1, 6, 7.  To corroborate Mayer's declaration and photographs, Mayer also highlights Garcia's testimony that she has also seen people stand on the elevated areas during large events, and she has taken photographs from the mezzanine due to its comprehensive view.  Garcia Dep. 99:16–23; 101:6–15.

The City questions the probative nature of Mayer's declaration, highlighting that Mayer had only attended about a dozen events over the course of 10 years.  Statement of Facts, Additional Fact E.  The City also highlights another portion of Garcia's testimony where she testifies that the last time she recalled people standing in the relevant locations was during an event "a few years ago," when the consul general from Mexico came to give a greeting on the balcony of the rotunda.  Garcia Dep. 99:16-100:19.  The City further argues that Mayer

United States District Court
Northern District of California

1  mischaracterizes the events manager's testimony—she stated that she does "[n]ot necessarily

2  [prefer the] particular viewpoint" at the mezzanine, but just generally prefers to take pictures from

3  higher grounds.  Garcia Dep. 101:16–24.  Finally, the City argues specifically that Location 3, the

4  tiered seating, does not offer a better vantage point, highlighting Garcia's testimony that she does

5  not photograph from Location 3 "because the viewpoint isn't very good," as in she would not be

6  able to see all the equipment, the majority of the plaza, or the number of people.  Garcia Dep.

7  102:5–15.

8      The Court finds no genuine dispute of material fact that accommodations to access the

9  viewpoints at Locations 1, 2, 4, and 5 are necessary; however, the Court finds disputed facts

10  regarding the necessity of accessing Location 3.

11      First, it is clear that attendees standing at Locations 1, 2, 4, and 5 enjoy a better viewpoint

12  of the First Amendment Events than attendees on the ground floor.  This is particularly true for

13  attendees bound to a wheelchair whose viewpoint from the ground floor is further obstructed by

14  attendees standing in front of them.  *See, e.g.,* Mayer Decl., Ex. 3; *id.* ¶ 13.  In this way, this case

15  is analogous to the Ninth Circuit's analysis in *Paralyzed Veterans of America v. Regal Cinemas,*

16  *Inc.*, 339 F.3d 1126, 1127–28 (9th Cir. 2003).  There, the plaintiff complained that a movie theater

17  with wheelchair-bound seats available only in the first row did not provide full and equal

18  enjoyment of the theater.  *Id.*  The Ninth Circuit agreed, finding it  "simply inconceivable that this

19  arrangement could constitute 'full and equal enjoyment' of movie theater services by disabled

20  patrons" because it required them "to crane their necks and twist their bodies in order to see the

21  screen, while non-disabled patrons [had] a wide range of comfortable viewing locations from

22  which to choose."  *Id.* at 1133.  Similarly, here, while Mayer can still attend the event, he is

23  blocked from seeing the speakers because of his disability, and he is not afforded the same benefit

24  of able-bodies attendees who can access the elevated areas.

25      However, the Court finds disputed facts regarding whether access to Location 3, the tiered

26  seating, is "necessary."  While Mayer's photographs show attendees standing at Location 3 during

27

United States District Court
Northern District of California

1   an event, and Mayer gives his opinion that it is a better view, Garcia testified that she has

2   personally overserved the view from Location 3 and does not photograph from that location

3   "because the viewpoint isn't very good." Garcia Dep. 102:5–15.  Thus, the question of whether

4   access to Location 3 is necessary for full and equal enjoyment remains disputed.

5          Therefore, the Court ends its analysis of the tiered seating at Location 3 here, but the Court

6   will continue with its analysis regarding whether the accommodations to access Locations 1, 2, 4,

7   and 5 are reasonable.

8                              **iii.    Reasonable Accommodations**

9          "Facilities are not required to make any and all possible accommodations that would

10   provide full and equal access to disabled patrons; they need only make accommodations that are

11   reasonable." *Baughman*, 685 F.3d at 1135.  "[W]hat constitutes [a] reasonable modification is

12   highly fact-specific, requiring case-by-case inquiry." *Crowder v. Kitagawa*, 81 F.3d 1480, 1486

13   (9th Cir. 1996).  "Reasonable modifications" do not include, for example, "measures that would

14   impose an undue financial or administrative burden or effect a fundamental alteration in the nature

15   of the service," or measures that create new programs to provide services the municipality did not

16   previously provide.  *Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 862 (9th Cir. 2022)

17   (cleaned up).  However, "[m]ere speculation that a suggested accommodation is not feasible falls

18   short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient

19   information from the disabled individual and qualified experts as needed to determine what

20   accommodations are necessary." *Duvall*, 260 F.3d at 1139 (cleaned up).

21          Mayer proposes several accommodations that he argues are reasonable ways to provide

22   him access to the elevated areas, including unlocking City Hall, installing a ramp, and installing

23   vertical wheelchair lifts.  The City argues that *any* accommodation to access the elevated areas

24   would be unreasonable because the areas are not intended for viewing purposes, and the City

25   disputes the reasonableness of Mayer's specific suggestions.  The Court will discuss the City's

26   arguments and Mayer's proposed accommodations in turn below.

27
28   ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN.
     IN PART CROSS-MSJ
                                        17

United States District Court
Northern District of California

### (i)      Elevated Areas Not Intended for Viewing Purposes

Before analyzing in detail Mayer's specific accommodations, as threshold matter, the Court will address the City's argument that *any* accommodation to access the elevated areas for viewing purposes is unreasonable because it is prohibited by the City's rules and regulations for safety purposes.  *See* Undisputed Facts 6.  The City presents evidence that the elevated areas are walkways intended solely to exit City Hall, not for viewing events.  *See, e.g.,* Casper Decl. ¶¶ 21, 28; Altwal Decl. ¶¶ 11, 12, 23 (referring to locations as walkways); Karb Decl., Ex. 17, at 6.  Specifically, the City highlights a provision from City Hall Facility Use Rules and Regulations Activities that prohibits using walkways for the purposes described by Mayer:

> 1.      The primary function of City Hall Lobby Areas and Walkways is to provide a means of egress from and ingress to City Hall.
> 2.      Secondarily, the Lobby Areas and Walkways serve the purpose of providing a place for the public to obtain information from the City about the services available in City Hall and public information provided by the City regarding an Integral Government Function.
> 3.      All activities within City Hall Lobby Areas and Walkways shall be in compliance with City Hall Facility Rules and Regulations.
> 4.      Activities that are inconsistent with the purpose of City Hall lobby Areas and Walkways and/or are a danger to public health and safety are prohibited as set forth in the City Hail Facility Use Rules and Regulations

Karb Decl., Ex. 17, at 6.  The City essentially argues that providing access to the elevated areas for the specific purpose of viewing events would change the function of the walkways and present safety risks, as the City does not wish to encourage the public to observe events from these elevated areas.

Mayer also refers to some of the elevated areas as "walkways" but argues that these areas are not restricted from being used as viewpoints.  First, Mayer highlights that the City's arguments pertain only to Locations 1, 2, and 5, not Location 4.[2]  Pl.'s Reply 9–10.  Mayer also argues that the presence of attendees in these areas shows that they are not actually restricted for viewing

---

[2] Mayer also argues that the City does not characterize Location 3 as a walkway, but the Court above found disputed facts regarding whether access to Location 3 is necessary and thus will not address that argument here.

Case No.: 5:20-cv-06710-EJD
ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN. IN PART CROSS-MSJ

purposes.  *Id.*  In support, Mayer highlights Garcia's deposition where she testified that her staff and herself are not aware of any policy prohibiting a person from using the elevated locations as viewing areas during events.  Garcia Dep. 99:16-100:3.  Garcia also testified that neither herself nor her staff would prohibit people from having a conversation and gathering in the elevated areas after leaving council chambers.  *Id.* at 131:23–132:6.  Mayer also cites to his own pictures of events showing numerous attendees using these areas a viewpoint.  Mayer Decl., Ex.1, 3–7, ECF No. 69-4, 69-6, 69-7, 69-8, 69-9, 69-10 (photographs).

The Court finds genuine disputes of material fact regarding whether Locations 1, 2, and 5 are restricted from being used as viewpoints for events due to safety concerns, and whether accommodations would therefore change their essential function as walkways.  While the City's rules and guidelines provide that these areas are restricted for purposes other than use as walkways, Mayer offers evidence to show that the public is not restricted from using the areas as viewpoints in practice.  Resolution of this question is material to determining whether any accommodation to access these locations would be reasonable, or whether accommodations would change the function of the space and implicate safety concerns.  Therefore, the Court's analysis of these Locations 1, 2, and 5 ends here.

However, as indicated above, the rotunda labeled as Location 4 is not implicated in these disputed facts—the City never disputed Mayer's argument that Location 4 is not a "walkway" for purposes of the cited rules and regulations.  The Court will therefore proceed in its analysis of whether accommodations to access Location 4 are reasonable.

### (ii)  Access to Location 4 Through City Hall Interior

Mayer argues that access to Location 4 is available through City Hall's interior during normal business hours, *see* MSJ 3, and a possible reasonable accommodation could be unlocking City Hall's doors after hours and on the weekends, *id.* at 16.  Mayer presents evidence that the interior access route has been used in the past for wheelchair access to Location 4 without issue, including the testimony of both the City's Event Coordinator and the Facility Manager.  Garcia

Dep. 68:19–71:25, 130:18–24; Karb. Decl., Ex. 3, Deposition of Walter Lin ("Lin Dep.") 81:14–22; 101:8–105:17, ECF No. 69-17.  Mayer also presents evidence that City Hall staff have been able to assist wheelchair users through the interior during pre-planned, permitted events during periods of closure to the public.  *Id.* at 101:8–105:17.  Finally, while City Hall staff are not personally present after business hours, Mayer argues that access through City Hall interior poses no safety or security risks because City Hall has in-house security that monitors the facility during meetings hosted after business hours, and the City has employed security teams in the past to work after hours and on the weekends to monitor the facility, including during the January 2020 Saturday event.  Garcia Dep. 109:6–11, 120:12–19, 130:18–133:15; Lin Dep. 81:22–82:15.

The City argues that allowing access to the interior of City Hall while it is closed to the public and no City staff are present would raise safety concerns and be an administrative and financial burden.  Def.'s Reply 8.

The Court finds that disputed facts regarding safety concerns preclude summary judgment. While the City does not present evidence regarding  the administrative or financial burden, evidence in the record that the City has already had "negative instances" inside City Hall, including vandalism and negative physical altercations, supports its argument regarding safety concerns.  Lin Dep. 44:4–18.  This evidence conflicts with Mayer's argument that there are no safety concerns because security is present after business hours.  On these facts, a reasonable jury could find that requiring that the City keep City Hall doors unlocked at all hours of the day and weekends, in the event that the public might gather for an un-planned, un-permitted event, presents an unreasonable safety risk.

### (iii)    Access Through a Ramp or Chairlift

Mayer's remaining proposed accommodations regarding ramps or chairlifts are all specific to Locations 1, 2, 3, and 5.  As discussed above, the Court found genuine disputes of material fact regarding whether any accommodations to these locations as "reasonable" due to their function as walkways.  Therefore, the Court finds it unnecessary to address the reasonableness of these

United States District Court
Northern District of California

1   accommodations at this time.

2                                        * * *

3        Accordingly, the Court finds that genuine disputes of material fact prevent it from granting

4   summary judgment in favor of either party as to Mayer's reasonable accommodation theory of

5   discrimination.

6                              **b.     Disparate Impact**

7        Disability discrimination may also be based on a disparate impact theory of liability.

8   *Payan*, 11 F.4th at 738.  "To assert a disparate impact claim, a plaintiff must allege that a facially

9   neutral government policy or practice has the 'effect of denying meaningful access to public

10  services' to people with disabilities."  *Id.* (quoting *K.M.*, 725 F.3d at 1102).

11       The difference between a disparate impact and reasonable accommodation claim "is that a

12  reasonable accommodation claim is focused on an accommodation based on an individualized

13  request or need, while a reasonable modification in response to a disparate impact finding is

14  focused on modifying a policy or practice to improve systemic accessibility."  *Id.*

15       Here, Mayer argues that the City's practice of locking City Hall doors after business hours

16  without providing alternative access disproportionately affects wheelchair users and violates the

17  ADA.  MSJ 17.  The City does not dispute that this policy disproportionately affects wheelchair

18  users, but again argues that changing this policy carries safety concerns.  Statement of Facts,

19  Additional Fact AA.

20       The Court similarly finds that disputed facts regarding the reasonableness of modifying this

21  policy precludes summary judgment as to ADA liability.  While it is undisputed that the City's

22  practice of locking the doors disparately restricts access to certain areas of the exterior for

23  wheelchair-bound people, Mayer again must present evidence that this accessibility barrier could be

24  remedied through reasonable modifications.  *See Payan*, 11 F.4th at 738 n.4 ("Although Title II of

25  the ADA uses the term reasonable modification rather than reasonable accommodation, these terms

26  create identical standards and may be used interchangeably.") (internal quotation marks omitted).

27
28  ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN.
    IN PART CROSS-MSJ
                                        21

United States District Court
Northern District of California

1    For all the reasons discussed above, the Court finds that Mayer's proposed solutions of leaving the

2    doors unlocked after business hours presents disputed material facts regarding safety concerns.

3        Accordingly, the Court similarly finds that genuine disputes of material fact prevent it

4    from granting summary judgment in favor of either party as to Mayer's disparate impact theory of

5    discrimination.

6                    **c.    Failure to Construct City Hall in Compliance with Federal
                          Access Standards**

7

8        Finally, Mayer argues that the City is liable under the ADA for failing to construct City

9    Hall in compliance with federal access standards.  A public entity "excludes" from participation or

10   "denies the benefits" of a public program if the "public entity's facilities are inaccessible to or

11   unusable by individuals with disabilities."  *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982,

12   985 (9th Cir. 2014).  "In defining accessibility, Title II's implementing regulations distinguish

13   between newly constructed or altered facilities . . . and existing facilities."  *Id.*  For newly

14   constructed or altered facilities to be "readily accessible," such as City Hall, the "facility must be

15   constructed in conformance with the Americans with Disabilities Act Accessibility Guidelines for

16   Buildings and Facilities (ADAAG), or with the Uniform Federal Accessibility Standards

17   (UFAS)."  *Id.* at 986 (internal citations omitted) (citing 28 C.F.R. § 35.151(c)(1)-(3)).  The parties

18   have stipulated that at the time of City Hall's construction, the applicable accessibility standards

19   under the ADA were the 1991 ADA Standards for Accessible Design for new construction ("1991

20   ADA Standards").  *See* Statement of Facts, Fact 8.

21       Mayer argues that the undisputed facts show the City violated the 1991 ADA Standards

22   regarding (1) signage, (2) accessible walkways, and (3) horizontal gaps in walking paths.  The

23   City argues that the undisputed facts show compliance with these 1991 ADA Standards.  The

24   Court will analyze each relevant 1991 ADA Standard in turn.

25                          **i.    Signage**

26       The parties agree that the 1991 ADA Standards require signage along the path of travel

27   directing wheelchair users to an accessible entrance, and there are no such signs at City Hall to

United States District Court
Northern District of California

direct the public to the doors at the top of the exterior pathway.  Altwal Decl. ¶ 26; Supplemental

Declaration of Bassam Altwal ("Supp. Altwal Decl.") ¶ 14, ECF No. 77-5; Casper Decl. ¶¶ 38–39.

However, the parties dispute whether the doors at the top of the exterior pathway is an

"entrance" requiring signage.  Mayer cites architectural plans labelling the doors as entrances and

testimony from the City's event manager confirming their dual function for entry and exit.  Casper

Decl. ¶ 25; Altwal Decl. ¶ 13; Garcia Dep. 69:6–71:25, 78:5-8.  The City rebuts with expert

testimony that the doors are used exclusively for exiting because they only contain hardware on

the exterior, and they were labeled with an "exit only" sign during an inspection in 2023.  Casper

Decl. ¶¶ 13, 25.

The Court finds the disputed facts regarding doors' function as an entrance preclude the

Court from entering summary judgment on this issue for either party.

### ii.      Accessibility of Walkways Leading to Entrances

Mayer also argues that the exterior walkway violates various other requirements for

pathways that lead to entrances.  MSJ 18.  However, again here, resolution of this question relies

on the disputed facts regarding whether the doors function as an "entrance."  For the reasons

discussed above, the Court finds that these disputed facts preclude it from entering summary

judgment on this issue for either party.

### iii.     Horizontal Gaps in the Accessible Route

The parties agree that the 1991 ADA Standards require that "gratings" located on walking

surfaces have spaces no greater than 1/2 inch.  Supp. Altwal. Decl. ¶ 24; Casper Decl. ¶¶ 46–49.

The City does not dispute that the openings located alongside the exterior walkway exceed

1/2 inch.  Casper Decl. ¶¶ 46–49.  However, the parties dispute whether these openings can be

considered "gratings."  Mayer classifies the openings as "grates," citing to his expert's report,

which classifies the openings as "decorative grates."  Supp. Altwal Decl. ¶ 24.  But the City

classifies the openings as drainage, not "grates," and argues that the drainage is not subject to the

1/2 inch requirement.  Casper Decl. ¶¶ 46–49.

The Court finds these disputed facts regarding the function of the surface area alongside the exterior walkway preclude the Court from entering summary judgment on this issue for either party.

* * *

Accordingly, as to Mayer's ADA claim, the Court **GRANTS** Mayer's motion for summary judgment on the following discrete issues: (1) Mayer is disabled for the purposes of the ADA, (2) the First Amendment Events were "programs or activities" for purposes of the ADA, and (3) access to Locations 1, 2, 4, or 5 are "necessary" for full and equal enjoyment of the First Amendment Events for purposes of the ADA.  The Court **DENIES** both parties' requests for summary judgment on all other remaining issues regarding ADA liability.

## F.     California Government Code

California Government Code section 4450 requires that "all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities."  To prove a violation of Section 4450, the plaintiff must establish a violation of the California Building Code ("CBC").  *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 174 (Cal. 1990) ("Government Code section 4450 et seq. requires that facilities conform to building standards published in the State Building Standards Code relating to access for the physically handicapped.").  The parties have stipulated that at the time of City Hall's construction, the applicable standards for new construction or alterations under California law were those contained in the 1998 California Building Code.  Def.'s Cross-MSJ 7; Statement of Facts, at 15.

Mayer argues that the undisputed facts show the City violated the 1998 CBC requirements regarding (1) accessible exit discharge, (2) signage, and (3) operating door pressure.  The City argues that the undisputed facts show City Hall is in compliance with these 1998 CBC requirements.  The Court will analyze each in turn.

### 1.     Accessible Exit Discharge

Mayer first argues that the exterior walkway and stairs are part of an exit discharge route

and therefore must be "accessible" under the 1998 CBC.  MSJ 21–22.  The City does not dispute that the route is not accessible, but instead argues that accessible egress at exits from an occupiable level above or below the ground level is not required under the 1998 CBC when buildings have an automatic sprinkler system, which is currently installed at City Hall.  Casper Decl. ¶ 26.

Mayer's reply ignores Casper's conclusions regarding City Hall's sprinkler systems. While Altwal's supplemental declaration mentioned Casper's opinions on this point, Altwal notably did not dispute the fact that the sprinkler system is installed in City Hall, or dispute Casper's conclusion that City Hall's sprinkler system satisfies its obligation to provide an accessible egress at exits from an occupiable level above or below the ground level.  Supp. Altwal Decl. ¶ 7.  Instead, Altwal's only argument is that Casper's conclusion "narrowly focuses on exits within the building itself, overlooking broader regulatory requirements."  *Id.*  Altwal goes on to quote two regulatory requirements from the 2022 CBC.  *Id.*  However, Altwal neither opines that the 2022 CBC is applicable here nor explains how the 2022 CBC changes the meaning of the 1998 CBC sprinkler system exception.  *See id.*

In lieu of a response from Mayer on this point, the Court finds that the City has presented undisputed evidence to show it is not in violation of the specific accessible exit discharge requirements Mayer cites because of its sprinkler system.

### 2. Signage

The parties agree that, similar to the ADA, the 1998 CBC also requires signage along the path of travel directing wheelchair users to an accessible entrance, and there are no such signs at City Hall.  Altwal Decl. ¶ 26; Supp. Altwal. Decl. ¶ 14; Casper Decl. ¶¶ 38–39.  However, as discussed above, the parties dispute whether the doors at the top of the exterior pathway is an "entrance" requiring signage.  For the same reasons stated above, the Court finds genuine disputes of material fact preclude summary judgment for either party on this issue.

### 3. Operating Door Pressure

The parties agree that the 1998 CBC requires that the maximum effort to operate exterior

doors shall not exceed 8.5 pounds.  MSJ 23; Casper Decl. ¶ 45.

Mayer argues that operating pressure for the doors at the top of the exterior pathway exceeds 8.5 pounds of force, highlighting that both parties' experts measured force exceeding 8.5 pounds.  Mayer's expert measured force between 22 to 28 pounds when the doors opened to a 90-degree angle.  Altwal Decl. ¶ 27.  Similarly, the City's expert measured force between 16.9 to 21.06 pounds at a 90-degree angle.  Casper Decl. ¶ 44.  The City's expert also measured the force when opened to a 70-degree angle, finding between 9.08 and 9.51 pounds of force.  *Id.*

The City's expert concluded that the doors could still "potentially" be in compliance with the 1998 CBC, despite the measurements above 8.5 pounds, for two reasons.  *See* Capser Decl. ¶ 4.  First, the City's expert opines that the measurements of force should be conducted at a 70-degree angle, relying on guidance from the U.S. Access Board, which is a federal agency offering advisory opinions on federal accessibility standards.  Casper Decl., Ex. B., at 37.  Second, using his 70-degree angle measurements of 9.08 to 9.51 pounds, the City's expert opined that the doors may still comply with the 1998 CBC because the wind impacted his measurements and potentially increased the door pressure above 8.5 pounds.  Casper Decl. ¶ 44.[3]

Mayer's expert rebuts that measurements should be conducted at 90-degree angles because the 1998 CBC requires all exit doors "swing to the fully open position,"  and the City's citation to the U.S. Access Board is irrelevant, particularly because there are no federal ADA regulations regarding door operating pressure.  Supp. Atlwal Decl. ¶ 18.

The Court finds that the undisputed facts support Mayer's argument.  As an initial matter, the Court will apply the experts' measurements at a 90-degree angle.  The City's use of the U.S. Access Board's guidelines to support its 70-degree angle theory is inapplicable to the CBC, which generally requires that doors "swing to the fully open position."  Using the 90-degree angle

---

[3] The Court is also unpersuaded by the City's argument that the doors must be considered an "entrance" or "ground floor exit" for the 8.5-pound requirement to apply.  Casper Decl. ¶ 45.  The Court agrees with Altwal that the 1998 CBC section upon which Casper relies does not impose this requirement.  *See* Supp. Altwal Decl. ¶ 19.

Case No.: 5:20-cv-06710-EJD
ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN. IN PART CROSS-MSJ

1   standard, it is clear that both experts' measurements far exceed the 8.5 pound maximum.  Even if

2   the presence of the wind impacted the City's measurements, the City's expert only opined that the

3   wind may have impacted his measurements of the doors at a 70-degree angle, and he formed no

4   opinion regarding whether the wind could have possibly added the substantial amount of weight

5   needed to bring the doors into compliance when measured at a 90-degree angle.

6       Therefore, the Court finds that the undisputed facts from both experts show that the doors

7   do not comply with 1998 CBC.

8                                           * * *

9       Accordingly, as to Mayer's California Government Act claim, the Court **GRANTS**

10  Mayer's motion for summary judgment on his claim that the doors' operating force violates the

11  1998 CBC.  The Court also **GRANTS** the City's motion for summary judgment on its argument

12  that the City's sprinkler system satisfies the 1998 CBC requirements regarding accessible exit

13  discharge.  The Court **DENIES** both parties' requests for summary judgment on all other

14  remaining issues regarding California Government Code liability.

15          **G.     The California Disabled Persons Act**

16      The California Disabled Persons Act guarantees to persons with disabilities "the same right

17  as the general public to the full and free use of the streets, highways, sidewalks, walkways, public

18  buildings, medical facilities, . . . public facilities, and other public places."  Cal. Civ. Code § 54(a).

19  A violation of the ADA is a violation of the CDPA.  Cal. Civ. Code § 54(c) ("A violation of the

20  right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101- 336)

21  also constitutes a violation of this section."); *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App.

22  4th 1401, 1413 (Cal. 2008).

23      Mayer's only argument to this point is that the Court should grant summary judgment

24  because the evidence shows the City violated the ADA.  MSJ 19.  Because, as discussed above,

25  the Court did not grant judgment as to ADA liability, the Court denies Mayer's motion for

26  summary judgment on this claim.

27

United States District Court
Northern District of California

**H.      Unruh Act**

The Unruh Act guarantees all Californians with disabilities full and equal access to "accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA by a business establishment is a violation of the Unruh Act. Cal. Civ. Code § 51(f); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007); *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 690 (Cal. 2022).

Mayer argues that, by renting out areas of City Hall, the City is engaged in a business-like activity subjecting it to liability under the Unruh Act. Mayer presents evidence that the City charges event organizers for plaza reservation, advertises this information on its website, and treats the organizers as "clients" entering into contracts, including payments for security and deposits. *E.g.,* Garcia Dep. 27:13–18, 62:10–20, 105:5–7, Garcia Dep., Ex. 6 (event invoices and permits).

The City argues that it is not subject to the Unruh Act because it is not a business, and it was not acting as a business when it allowed the First Amendment Events to occur in the West Plaza. Cross-MSJ 8.

The Court finds that City is not subject to the Unruh Act based on these specific facts.[4] While the City may act as a business when it rents out the plazas and provides services for events, Mayer attended unplanned and unpermitted events where there is no evidence that the organizers reserved the plaza, paid money for a permit, or entered into any contract with the City whereby they exchanged money or were considered "clients." In other words, there is no evidence that the City operated as a business when it allowed Mayer and other members of the public to freely assemble on its property for the First Amendment Events.

Therefore, the Court **GRANTS** the City's motion for summary judgment as to Mayer's

---

[4] The City is incorrect that it cannot be held liable under the Unruh Act under any circumstance. As Mayer highlights, even entities not traditionally seen as business establishments may fall under the Unruh Act if they operate with sufficient businesslike attributes. *See, e.g., Sherman v. Regents of Univ. of Cal.*, No. 20-cv-06441-VKD, 2022 U.S. Dist. LEXIS 70765, at *47–49 (N.D. Cal. Apr. 8, 2022); *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 769 (2002) (noting in dicta that a county fair could be a business establishment under the Unruh Act); *O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 796 (Cal. 1983); *Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 78–83 (Cal. 1985).

Case No.: 5:20-cv-06710-EJD
ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN. IN PART CROSS-MSJ

1    Unruh Act claim.

2    **IV.    CONCLUSION**

3    The Court **GRANTS IN PART AND DENIES IN PART** Mayer's motion for summary

4    judgment.  The Court finds no genuine dispute of material fact regarding the following issues:

5    　　　　1.    Mayer is disabled for purposes of the ADA.

6    　　　　2.    The First Amendment Events were services for purposes of the ADA.

7    　　　　3.    Access to Locations 1, 2, 4, or 5 are necessary for full and equal enjoyment of the

8    First Amendment Events for purposes of the ADA.

9    　　　　4.    The force measured on the doors at the top of the exterior walkway violate the 1998

10   CBC.

11   The Court otherwise **DENIES** summary judgment as to all other remaining issues in

12   Mayer's motion for summary judgment.

13   The Court **GRANTS IN PART AND DENIES IN PART** the City's cross-motion for

14   summary judgment.  The Court finds no genuine dispute of material fact regarding the following

15   issues:

16   　　　　1.   The sprinkler system in City Hall relieves the City of its obligation to comply with the

17   　　　　　　1998 CBC accessible exit discharge requirements cited by Mayer.

18   　　　　2.   The City is not liable under the Unruh Act.

19   The Court otherwise **DENIES** summary judgment as to all other remaining issues in the

20   City's motion for summary judgment.

21   　　　　**IT IS SO ORDERED.**

22   Dated: September 16, 2024

23

24   _____

25   EDWARD J. DAVILA
     United States District Judge

26

27   Case No.: 5:20-cv-06710-EJD

28   ORDER GRANTING IN PART AND DEN. IN PART MSJ; GRANTING IN PART AND DEN.
     IN PART CROSS-MSJ

United States District Court
Northern District of California

29